UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA     *     CRIMINAL NO. 12-cr-00146(02)

VERSUS                *     JUDGE FOOTE

DREW T. GREEN (02)          *     MAG. JUDGE HANNA

---

## AFFIDAVIT NO. 1

**STATE OF LOUISIANA**

    **BEFORE ME**, the undersigned Notary Public, personally came and appeared:

**DREW T. GREEN**

who, first being duly sworn, did depose and say that:

1)    The firm of Bruce Harvey was retained on march of 2011 to defend and answer a FDA subpoena from the state of Kansas. Drew T. Green and Thomas Malone Jr. drove to meet with Bruce Harvey and Stuart Mones where the attorneys worked in the same office together. The Initial retainer was $30,000.00 on behalf of NutraGenomics as the company documents were being subpeoned. Mr. Harvey stated that Stuart Mones would be the primary attorney and the he would oversee our case as needed.

2)    The firm of Bruce Harvey was involved in the day to day operations of NutraGenomics as Stuart Mones gave advice ranging from where to park monies overseas, invoice wording, writing agreements, legal referrals and working with various experts in law.

3)    On April 8th, 2011 Ryan Brents our chief Information officer had given Stuart Mones and the Firm of Bruce Harvey their own password and username thereby giving counsel 100% complete access to over 100,000 NutraGenomics documents which included all records including invoices, purchase orders, sales orders, payments, SMS history, chemical opinions, RTP lab reports and more. All RTP lab reports were to be reviewed which included every raw chemical our company had sold and Mr. Miyagi's ingredients. Chemical analysis which included opinions were to be performed and it was put into Mr. Mones hands as the point person. Mr. Mones was designated to find these experts. On or about April 2012 the firm of Bruce Harvey, at the request of Stuart Mones, was paid an additional $9000.00 by NutraGenomics for this very reason.

4)      On or about September 2011 Mr. Mones advised Drew T Green that since Mr. Miyagi did NOT contain any of the chemicals in the March 2011 ban list, that NutraGenomics was in compliance.

5)      On or about September 2011, Mr. Mones advised Drew T. Green that none of the chemicals we had sold into Kansas were banned by the state at the time of sale. Stuart Mones confirmed that NutraGenomics was in compliance with all state and federal laws.

6)      After September 2011 Mr. Mones continued working with NutraGenomics as General Counsel as the Kansas FDA subpoena had been resolved.

7)      On or about July 2012 Drew T. Green gave Stuart Mones a grand total of $230,535.00 as a legal retainer. The day of NutraGenomics' raid which was July 25, 2012 while sitting in the car, counsel stated "He needed an additional retainer of $150,000.00" and commenced to drive me to Wells Fargo bank. I had been talking with Stuart over the last month that in the event of an indictment we had discussed going to trial which included the very moment I gave him an additional $150,000.00. Just 14 days earlier on July 11th, 2012 Drew T. Green had given counsel in the form of a cashier's check $75,000.00 which was the same day of the California raid as an initial legal retainer.

8)      On or about July 29th, 2012 Stuart Mones states that it's in my best interest to go to Louisiana to proffer information to talk with the government. On the airplane Stuart does NOT prep me for the meeting and reveals that a proffer means that you are a "Queen for the day" and states that "Everything you tell them cannot be used against you." Upon meeting with the AUSA Collin J. Sims, counsel stays silent and allows the prosecution to ask me many questions. I spoke candidly to the government about and any all details. I had no knowledge at that time a proffer is usually a medium to cut a plea deal. The government did NOT show me any information that was revealed I had committed a crime.

9)      Counsel commences using coercive statements which threaten me to plea, such as "Ignorance of the law is no excuse." "I can wrap up 26 states into the federal plea." and "Tommy is going to plea first and you will get stuck with the leadership role which comes with 30+ years." Additionally, counsel stated the government could legally take the house that Lara and my children are living in even after I mentioned to him I had bought the house in December of 2002 and we had not made any large payments on it with the present monies I had earned.

10)     Anytime I would tell counsel that I never committed a crime he would state "Ignorance of the law is no excuse." Stuart Mones repeated this phrase again 5 years later and on 2 seperate occasions which have occurred in the past 8 months. While on the phone I asked him what my legal options were and stated "I wanted to pull my plea by filing a 2255 motion." On July 19th, 2017 this phone call occurred and when I made that statement he panicked and got defensive. Counsel stated "Please don't do that, those 26 states can still come after you." That is when I first became aware of his

misrepresentations. I started asking for my discovery files and additional information. Another phone call occurred about a month later and I stated "I still don't think I ever committed a crime." Counsel stated " Ignorance of the law is no excuse." and "I didn't want to have those 26 states come after me." I stated "You wrapped the states up into the plea?" He then realized I knew and quickly changed his tune and panicked by saying "26 districts I mean 26 districts." I remained silent and said nothing after that and counsel asked if I was angry." We hung up.

11)     On August 8th, 2017 Tommy Malone Jr. sent me a message stating " I called Bruce not long after the raids and he was in trial." "I remember him saying that they were threatening to indict Stuart, or at least come after him. Because he was calling Bruce all freaked out." " Bruce was really a backseat as you recall with the FDA subpeaona out of Kansas, etc." " Bruce told Steve that the AUSA over there was threatening to indict Stuart as he was your attorney. So I'd better hurry."

12)     Before the plea and the day of the plea counsel Stuart Mones stated "I have never met anyone that went to such great lengths to never commit a crime but ignorance of the law is no excuse."


_____
DREW T. GREEN

SWORN TO AND SUBSCRIBED
BEFORE ME, this _____ day of
_____, 2018.


_____
NOTARY PUBLIC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 12-cr-00146(02) |
| VERSUS | * | JUDGE FOOTE |
| DREW T. GREEN (02) | * | MAG. JUDGE HANNA |

---

## AFFIDAVIT NO. 2

**STATE OF LOUISIANA**

**BEFORE ME**, the undersigned Notary Public, personally came and appeared:

## DREW T. GREEN

who, first being duly sworn, did depose and say that:

1)      On 7-19-2017 I called Stuart Mones and I asked him what my legal remedies were in regards to my case. Counsel advised a rule 35 was best option. I then told him that I wanted to pull my plea. I did NOT believe that I ever committed a crime. I also started asking for several documents related to my case over the next couple of weeks including my Discovery file.

2)      I asked Stuart Mones by email through my ex-wife Lara Burgard for my Discovery Files on August 11th 2017. Stuart Mones called Lara Burgard quickly and stated "that he did NOT have to give me the Discovery Files." Lara Burgard has signed an affidavit reflecting this testimony.

3)      On or about August 20th 2017 I had asked a friend who was helping with my case to pull the Docket related to my case and it was emailed to me for my review. Upon reviewing the Docket it was noticed that on page #6 Stuart Mones has filed a motion on November 6th 2012 for [my entire legal Discovery].

4)      I followed up with another email asking for [my entire legal Discovery] on August 29th 2017. I stated "Lara told me that you said you didn't have to give me the file." I declare to Stuart that "I am going to file at the Georgia bar association if I don't receive a confirmation of [my entire legal Discovery] being sent to me or Lara directly by September 8th 2017."

5)      On August 29th 2017 Stuart replies to the previous email and says "I have always stated I will get it to you." "You are asking for materials spread out over years and many folders and boxes." "I am working on it."

6)      On August 29th 2017 I repled back "I believe you have a disc as is standard practice." "What I am requesting now is all communications you have received on my behalf as Counsel."

7)      On September 7th 2017 Stuart emails me back and states "I have sent a discs with thousands of pages of material to Lara by Fed-EX Overnight." "As you recall, we cooperated immediately after the raid and entered a plea shortly thereafter." "Because of the quick plea, we did not get discovery in the traditional sense, but there is a ton of what you are looking for on the disc I sent."

8)      On September 12th 2017 upon reviewing the supposedly [entire legal Discovery] Drew T. Green sends an email to Stuart Mones stating "I reviewed the entire disc and to my surprise very few discovery documents prior to my indictment on September 7th 2012 were available." "If this is really my Discovery disc then why did you have me plea to a charge when they had no evidence at all?" "How could you make a honest determination from what you sent me that I was guilty based upon the evidence the government had against me?" "It's a common practice for attorneys to review the governments evidence in the discovery file with their client before making a determination of a plea." "I was NOT afforded that opportunity to make a clear determination on what the government had as evidence against me,"

9)      On September 12th 2017 Stuart Mones replies back and states "You pled guilty almost immediately and therefore did not receive Discovery as you would in a contested case" "Our information that you and I used came from YOU and Tommy and many other sources." "It did not come from the Government." " I asked the Government for your entire Discovery and when I get it I will send it to you."

10)     On or about October 9th, 2017 Drew T Green received 39 Discovery discs from Stuart Mones.

11)     Upon reviewing the Discovery discs it was revealed that approximately 8,877 files have been removed from 4 document Discovery discs. Mr. Green was able to make this determination by comparing the Governments document disclosure paperwork which shows the exact files the Government has redacted and the number of files put onto each disc.

12)     Upon reviewing document Discovery disc N it was noticed that 1,776 files were added that were originally on document Discovery disc #1 and #2 which reveals the Discovery discs have been altered.

13)     On or about November 10, 2017 Mr. Green emailed Stuart Mones and stated that
these Discovery discs have been altered as many files have been removed. Stuart Mones
stated "Did you think the Government would give you your entire Discovery?"

14)     It was noticed that all of the authors from each Discovery discs have been
removed thereby hiding the source and creator of these 39 Discovery Discs.

_____

DREW T. GREEN

SWORN TO AND SUBSCRIBED
BEFORE ME, this _____ day of
_____, 2018.


_____

NOTARY PUBLIC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA     *     CRIMINAL NO. 12-cr-00146(02)

VERSUS     *     JUDGE FOOTE

DREW T. GREEN (02)     *     MAG. JUDGE HANNA

---

## AFFIDAVIT NO. 3

**STATE OF LOUISIANA**

    **BEFORE ME**, the undersigned Notary Public, personally came and appeared:

## DREW T. GREEN

who, first being duly sworn, did depose and say that:

1)     Drew T Green was interviewed while under shield of Counsel and only talked with the Government during proffered testimony which started on July 31st, 2012 and ended the day of my plea which was on September 7th, 2012.

2)     The prosecution never asked me if JWH-018 was ever used as an ingredient in Mr. Miyagi.

3)     During the proffered testimony the Prosecution asked me what was the active ingredient in Mr. Miyagi and I told them JWH-081 & JWH-250 in the summer of 2010 and we eventually transitioned to AM-2201.

4)     Mr. Miyagi never contained any of these susbtances prior to the March 1st, 2011 DEA Temporary ban of JWH-018, JWH-073, JWH-200, CP,47,497 and Cannabicyclohexanol.

5)     Colin J. Sims stated the day of the plea "the indictment was related to bulk chemical sales across the United States ranging from the conspiracy dates starting March 1st, 2011 until I stopped selling AM-2201, JWH-081, JWH-250 & UR-144."

6)     Mr. Green stated "I don't know that AM-2201 is an analogue let alone JWH-081, JWH-250 & UR-144." Collin J. Sims states that not only is AM-2201 a schedule I analogue but our chemist Michelle Walker who's going to testify in this case says AM-2201, JWH-081, JWH-250 & UR-144 are all analogues of JWH-018.

7)      Colin J. Sims states "since AM-2201, JWH-081, JWH-250 & UR-144 are all analogues of JWH-018 you need to give us a total weight for the (4) chemicals that you sold during the time of the conspiracy in order for us to do a plea deal with you today."

8)      I stated "I want to see my records first before I plea."Colin J. Sims response threaten's me by his response to either guess now or your walking away from the negotiating table from a plea deal now and in the future."

9)      I then ask to step outside to talk with Counsel Stuart Mones and he states" that you are the primary witness and that I will get credit for everyone that comes after me which puts me in the best position to do the least amount of time." Counsel states "that includes credit for Tommy, Alex and everyone else in the indictment."

10)      After I come back from talking with Counsel; Colin J. Sims slides a piece of paper and a pen to guesstimate how many kilograms of the (4) stated chemicals listed in the indictment that NutraGenomics had sold in bulk across the United States from march 1st, 2011 to when I stopped my business.

11)      Counsel Stuart Mones during the plea states to Colin J. Sims; Can we wrap those 26 states in the plea as agreed correct? Colin J. Sims states; We don't perform any written agreements in this district but I give you my word that since your pleadng today I will talk with everyone and tell them to back off as your cooperating with us.

12)      Stuart did not give me any advice or indication on how the ratio could greatly effect my sentencing guideline range by staying silent Counsel led me to believe I plead to a 1:1 ratio.

13)      On our way back from the plea I had mentioned to Counsel that 1400kgs of Marijuana at a 1:1 ratio would most likely get me probation correct? Especially with all of my cooperation for pleaing first. Counsel never commented on my statement of belief or my expectations as he stayed silent.


                                   _____
                                   DREW T. GREEN

SWORN TO AND SUBSCRIBED
BEFORE ME, this _____ day of
_____, 2018.


_____
NOTARY PUBLIC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 12-cr-00146(02) |
| VERSUS | * | JUDGE FOOTE |
| DREW T. GREEN (02) | * | MAG. JUDGE HANNA |

---

## VERIFICATION

**STATE OF LOUISIANA**

**BEFORE ME**, the undersigned Notary Public, personally came and appeared:

### DREW T. GREEN

who, first being duly sworn, did depose and say that he has read the Supplemental Memorandum in Support of Petition to Vacate, Correct, or Set Aside the Petitioner's Conviction and Sentence Pursuant to 28 U.S.C. § 2255 and the information pled therein is true and correct to the best of his knowledge, information and belief.


_____
DREW T. GREEN

SWORN TO AND SUBSCRIBED
BEFORE ME, this _____ day of
_____, 2018.


_____
NOTARY PUBLIC